IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
FLEETWOOD TRANSPORTATION CORP.     )
and TRANSPORTATION CONSULTANTS,    )
INC.,                              )
                                   )
          Plaintiffs,              )
                                   )
     v.                            )    1:10MC58
                                   )
PACKAGING CORPORATION OF           )
AMERICA,                           )
                                   )
          Defendant.               )
```

### MEMORANDUM OPINION AND ORDER
### OF UNITED STATES MAGISTRATE JUDGE

The instant case comes before the Court on (1) Salem Carriers, Inc. and Salem Leasing, Inc.'s Motion to Reconsider (Docket Entry 8); (2) Salem Carriers, Inc. and Salem Leasing, Inc.'s Motion for Stay (Docket Entry 10); (3) Salem Carriers, Inc. and Salem Leasing, Inc.'s Motion for Leave to File Documents Under Seal (Docket Entry 11); and (4) Salem Carriers, Inc. and Salem Leasing, Inc. [sic] Motion for Withdrawal of Appearance of Counsel (Docket Entry 20) all filed by non-parties Salem Carriers, Inc. and Salem Leasing, Inc. (collectively "Salem").

For the reasons that follow, Salem's motion for leave to file documents under seal (Docket Entry 11) and Salem's motion to reconsider (Docket Entry 8) will both be denied, and Salem's motion for stay (Docket Entry 10) and Salem's motion for withdrawal of appearance of counsel (Docket Entry 20) will both be granted.

Background

Plaintiff Fleetwood Transportation Corporation ("Fleetwood") and Salem are competitors in the trucking business. (Docket Entry 2 at 1.) Transportation Consultants, Inc. ("Transportation") is the holding company for Fleetwood. (Id.) In July 2007, Fleetwood and Transportation (collectively "Plaintiffs") filed a business interference lawsuit in South Carolina state court against Salem alleging that Salem developed a plan, along with Plaintiffs' former employees, to acquire Plaintiffs' customer, Packaging Corporation of America, Inc. ("Packaging Corporation"). (Id. at 1-2.) The action between Plaintiffs and Salem, though "hotly litigated and involv[ing] extensive discovery," eventually settled. (Id. at 2.)

The instant action between Plaintiffs and Packaging Corporation, which arises from the same factual circumstances as Plaintiffs' prior action against Salem, is currently pending in the United States District Court for South Carolina. (See Docket Entry 6 at 1.) In connection with that action, Plaintiffs served Salem with a subpoena for the production of documents pursuant to Fed. R. Civ. P. 45. (Id.) Salem filed a motion to quash (Docket Entry 1), contending that this Court should quash Plaintiffs' subpoena because:

(1) "Salem produced the information requested in the Subpoena to Plaintiff in [the] prior lawsuit to which Plaintiff

-2-

was the party.  Thus, the document requests will subject
Salem to undue burden and expense, and Plaintiff has
already obtained this information" (id. at 1);

(2) "Producing the information requested in the Subpoena is
[] unduly burdensome to Salem considering Plaintiff can
obtain the information more easily from a different
party, namely, the defendant" (id.); and

(3) "The document requests contained in the Subpoena [] seek
information that is of a proprietary and confidential
nature" (id.).

Plaintiffs responded that:

> Although Plaintiffs and Salem engaged in discovery during
> the course of the prior suit, Salem misconstrues the
> extent of that discovery with the requests made by
> Plaintiffs in the Subpoena at issue. Plaintiffs
> specifically limited its Subpoena to documents not
> produced in the prior suit. Additionally, Salem's
> argument that the documents requested in the Subpoena are
> confidential and commercial also fails because similar
> information was freely produced in the prior suit
> without, or subject to, a Protective Order. Lastly, many
> of the documents sought by Plaintiffs via the Subpoena
> cannot be obtained from [Packaging Corporation].

(Docket Entry 6 at 3.)

Salem declined to file a Reply (see Docket Entries dated Dec. 3, 2010, to present) and this Court, by way of Minute Order of Magistrate Judge Wallace W. Dixon, denied Salem's motion to quash. (See Docket Entry dated June 14, 2011.)

Salem now moves the Court to reconsider Magistrate Judge Dixon's earlier Order (see Docket Entry 8) "on the basis of

additional information regarding the requested confidential business information, the lack of relevance of some of that information to this lawsuit, and the unfair competitive advantage that Plaintiff[s] would obtain over Salem if Plaintiff[s] obtained such information" (Docket Entry 9 at 2). Salem also moves the Court to stay the 14-day deadline for "serving and filing written objections to Magistrate Judge Dixon's June 14, 2011 minute order denying Salem's motion to quash a document subpoena" until the Court has had an opportunity to rule on the motion for reconsideration (Docket Entry 10 at 1) and for the Court to allow Salem to file under seal the settlement agreement between it and Plaintiffs, as well as a supplemental affidavit and supplemental brief discussing that agreement, on which it relies in part in its motion for reconsideration (Docket Entry 11).

In addition, the Court will address Salem's motion for withdrawal of appearance of counsel in which Salem "respectfully moves the Court pursuant to LR 83.1(e) to allow Gary L. Beaver, Jeffrey M. Reichard, and the law firm of Nexsen Pruet, PLLC to withdraw their appearance in this case." (Docket Entry 20 at 1.)

## I. Motion to Seal

Salem "move[s] the Court for [an] Order granting Defendant leave to file under seal [the] confidential settlement agreement between Salem and the Plaintiffs . . . and an affidavit and supplemental brief discussing the terms of that agreement."

(Docket Entry 11 at 1.)  Plaintiffs have objected to said motion on the grounds that, "[d]ue to litigation currently pending in the United States District Court for the District of South Carolina, Plaintiffs . . . sought and received permission to use documents related to the prior action [between Plaintiffs and Salem] in South Carolina State Court.  That permission included the settlement agreement and documents previously produced under a protective order."  (Docket Entry 15 at 1.)  Thus, as Salem gave permission and the settlement agreement has been publicly docketed in that action, Plaintiffs contend Salem has waived the confidentiality of the settlement agreement.  (See id. at 3.)

A. Standard

"The operations of the courts and the judicial conduct of judges are matters of utmost public concern." Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 839 (1978).  As a result, "the courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978). See also Columbus-America Discovery Group v. Atlantic Mut. Ins. Co., 203 F.3d 291, 303 (4th Cir. 2000) ("Publicity of such records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case. It is hardly possible to come to a reasonable conclusion on that score without knowing the facts of the case."); In re Krynicki, 983 F.2d 74, 75 (7th Cir.

1992) ("Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat; this requires rigorous justification.").[1]

"The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." Virginia Dep't of State Police v. The Washington Post, 386 F.3d 567, 575 (4th Cir. 2004). The common law right of access, which attaches to all judicial records and documents, "'can be rebutted if countervailing interests heavily outweigh the public interests in access' . . . ." Id. (quoting Rushford v. The New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988)). In contrast, the First Amendment guarantee of access has been "extended only to particular judicial records and documents," Stone v. University of Md. Med. Sys., 855 F.2d 178, 180 (4th Cir. 1988), and, where it applies, "may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest" id.

In light of this legal framework, "[w]hen presented with a request to seal judicial records or documents, a district court

---

[1] The right of access to court records flows from the right of access to in-court proceedings; it applies in both civil and criminal cases. See Rushford v. The New Yorker Magazine, Inc., 846 F.2d 249, 253 & n.4 (4th Cir. 1988).

-6-

must comply with certain substantive and procedural requirements. As to the substance, the district court first must determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." Virginia Dep't of State Police, 386 F.3d at 576 (internal citations and quotation marks omitted). See also United States v. Moussaoui, 65 Fed. Appx. 881, 889 (4th Cir. 2003) ("We therefore must examine [materials submitted under seal] document by document to determine, for each document, the source of the right of access (if any such right exists). As to those documents subject to a right of access, we must then conduct the appropriate balancing to determine whether the remainder of the document should remain sealed, in whole or in part. The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access." (internal citation omitted)). Procedurally:

> [The district court] must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing. Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review.

Virginia Dep't of State Police, 386 F.3d at 576 (internal citation omitted) (emphasis added).

As to the level of substantive protection due to the documents at issue in this case, the Court notes that significant authority indicates that "material filed with discovery motions is not subject to the common-law right of access." Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1312 (11th Cir. 2001). Accord Anderson v. Cryovac, Inc., 805 F.2d 1, 10 (1st Cir. 1986) ("Although we agree that the public has a right of access to some parts of the judicial process, we conclude that this right does not extend to documents submitted to a court in connection with discovery proceedings."). Other courts have gone further and declined to apply common-law right of access and/or First Amendment analysis to discovery material attached to any "nondispositive motion" (and instead required only a showing sufficient to trigger protection under Rule 26(c)). See, e.g., Pintos v. Pacific Creditors Ass'n, 565 F.3d 1106, 1115 (9th Cir. 2009) ("'[G]ood cause' is also the proper standard when a party seeks access to previously sealed discovery attached to a nondispositive motion."). Still other courts have drawn the line of demarcation as to the common law right of access between discovery motions and other nondispositive, pretrial motions. See, e.g., Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 165 (3d Cir. 1993) ("[W]e hold there is a presumptive right to public access to all material filed in connection with nondiscovery pretrial motions . . ., but no such right as to discovery motions and their

supporting documents."). It does not appear that the Fourth Circuit has made clear its position on this subject, but it has stated "that a document becomes a judicial document when a court uses it in determining litigants' <u>substantive</u> rights." <u>In re Policy Mgt. Sys. Corp.</u>, Nos. 94-2254, 94-2341, 1995 WL 541623, at *4 (4th Cir. Sept. 13, 1995) (unpublished) (emphasis added).

B. Discussion

Salem's brief indicates that it seeks to file three documents under seal: (1) the settlement agreement entered into between Plaintiffs and Salem as a result of the prior lawsuit; (2) a supplemental affidavit identifying the settlement agreement; and (3) a supplemental brief discussing the settlement agreement. (<u>See</u> Docket Entry 12 at 1.) The Court notes initially that it appears that only the brief discussing the settlement agreement has been provided to the Court. (<u>See</u> Docket Entries dated Nov. 3, 2010, to present.) Given the Court's interest in examining each document offered for filing under seal to determine whether a less stringent alternative to sealing a document in its entirety will suffice, the Court is hesitant to seal items which it has not had the opportunity to inspect. Accordingly, to the extent Salem's motion to seal applies to the settlement agreement itself and the affidavit identifying the settlement agreement, the Court will deny Salem's motion.

With respect to Salem's brief discussing the settlement agreement (Docket Entry 13), the Court must determine what, if any, public access right attaches to the brief covered by the instant sealing request. See Virginia Dep't of State Police, 386 F.3d at 576.[2] In this case, Salem filed the documents at issue in connection with a non-dispositive, pretrial motion adjudicating a discovery dispute. (See Docket Entry 8.) Accordingly, based on significant authority, see discussion supra pp. 8-9, the Court deems that neither the common law nor First Amendment right of access applies, and the document in question may be sealed for good cause, see Fed. R. Civ. P. 26(c)(1).

In that regard, Salem contends that good cause exists because the brief in question discusses the confidential terms of the settlement agreement. (See Docket Entry 12 at 3.) Salem also contends that the interest of the efficient administration of the courts, including the encouragement of parties to settle disputes, is served by maintaining those terms as confidential. (See id.)

However, Salem concedes that the settlement agreement, which provides the basis for sealing the brief, has been publicly docketed in Plaintiffs' action against Packaging Corporation in the United States District Court for South Carolina. (Docket Entry 19

---

[2] The Court observes that the instant motion to seal has been publicly docketed since June 28, 2011 (Docket Entry 11). Any interested party therefore has had sufficient time to seek intervention to contest any sealing order, and Plaintiffs have done so (see Docket Entry 15). Accordingly, the Court concludes that, as to the motion at issue, the "public notice" prerequisite to entry of a sealing order has been satisfied. See Stone, 855 F.2d at 181 (discussing use of docketing to comply with procedural requirements for sealing).

at 5.)  Although Salem argues that it never intended to allow Plaintiffs to use the agreement in a non-confidential manner (see id. at 1-2), and has provided a letter which was sent to Plaintiffs' counsel in which Salem notes its efforts to have the settlement agreement re-filed under seal (see Docket Entry 19-2 at 3), as of Salem's last filing on the issue, the document remained publicly available (see Docket Entry 19 at 5).  Salem has made no additional filings with this Court indicating that its efforts to have the document re-filed under seal have been successful, or that the status of the settlement agreement has otherwise changed in any respect.  (See Docket Entries dated Aug. 5, 2011, to present.)

On these facts, given the public availability of the settlement agreement which provides the underlying basis for filing Salem's brief under seal, the Court finds that Salem has failed to show good cause for the Court to file under seal Salem Carriers, Inc. and Salem Leasing, Inc.'s Supplemental Brief in Support of Motion to Reconsider (Docket Entry 13).

## II. Motion for Reconsideration

Salem asks the Court to reconsider the Minute Order denying Salem's motion to quash (Docket Entry dated June 14, 2011).  (See Docket Entry 8 at 1.)  Citing Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000), which held that "a motion for reconsideration is appropriate where the court misapprehended the facts, a party's position, or the controlling law," Salem contends

that its motion for reconsideration is proper "based on several factual bases that may have been previously misapprehended" (Docket Entry 18 at 3). The "factual bases" Salem lists are:

(1) "That Salem and Plaintiffs are direct competitors (Salem's Opening Br. at 9)" (id.);

(2) "That the information requested in the Subpoena would competitively disadvantage Salem if produced to Plaintiffs ([Salem's Opening Br.] at 6-7)" (id.);

(3) "That the information requested has no bearing on the South Carolina action, in which Plaintiffs request fundamentally different relief than was pursued [sic] the [p]rior [l]itigation to which Salem was a party ([Salem's Opening Br.] at 7-9)" (id.);

(4) "That the Subpoena impose [sic] an undue burden on Salem in that it would require Salem to produce literally thousands of documents to Plaintiffs ([Salem's Opening Br.] at 10-11)" (id.); and

(5) "That these considerations are further heightened by the fact that Salem previously settled the [p]rior [l]itigation with the intent to buy its peace from Plaintiffs ([Salem's Opening Br.] at 11-12; Salem's Supp. Br. [Dkt. No. 13] (submitted for filing under seal))" (id.).

In sum, Salem contends that "the Court may have misunderstood the underlying facts, and the potential consequences to Salem that will result from its original ruling." (Id. at 4.) Salem's motion relies in part on the sealed brief, which discusses the settlement agreement previously entered into between Salem and Plaintiffs.[3]

A. Standard

Under the Federal Rules of Civil Procedure, "any order or other decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). No clear standard exists for analysis of a motion for reconsideration under Fed. R. Civ. P. 54(b) other than that its resolution is "committed to the discretion of the court." American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003). In contrast, a motion to alter or amend a final judgment under Fed. R. Civ. P. 59(e) may be granted "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pacific Ins. Co. v. American Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998).

---

[3] The Court notes again that in addition to the brief, Salem indicates that it sought to file the settlement agreement itself as well as an affidavit identifying the settlement agreement under seal with the Court. (See Docket Entry 11.) However, the settlement agreement, as well as the referenced affidavit discussing said agreement, do not appear on the Court's CM/ECF system. (See Docket Entries dated Nov. 3, 2010, to present.) Accordingly, the Court is able to consider Salem's brief and quoted information in said brief from the settlement agreement and the relevant affidavit, but the Court is unable to analyze the actual contents of the settlement agreement or the affidavit.

-13-

Although the Fourth Circuit has made it clear that the standards governing reconsideration of final judgments under Fed. R. Civ. P. 59(e) are not determinative of the reconsideration of an interlocutory decision, see Saint Annes Dev. Co., Inc. v. Trabich, No. 10-2078, 2011 WL 3608454, at *3 (4th Cir. Aug. 14, 2011) (unpublished) ("The power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders." (quoting American Canoe, 326 F.3d at 514-15)), courts have routinely looked to those factors as a starting point in guiding their discretion under Fed. R. Civ. P. 54(b). See, e.g., Mesmer v. Rezza, No. DKC 10-1053, 2011 WL 55448990, at *3 (D. Md. Nov. 14, 2011) (unpublished) ("While the standards articulated in Rules 59(e) and 60(b) are not binding in an analysis of Rule 54(b) motions, . . . courts frequently look to these standards for guidance in considering such motions . . . ." (internal citations omitted)); Phillip v. GEO Grp., Inc., No. 5:09-CT-3115-FL, 2011 WL 4946769, at *4-5 (E.D.N.C. Oct. 18, 2011) (unpublished) (same). Courts have also held, as Salem suggests, that "[a] motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence."

Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 402 F. Supp. 2d 617, 619 (M.D.N.C. 2005) (citation omitted) (Osteen, J.).

However, the Court also recognizes that "[p]ublic policy favors an end to litigation and recognizes that efficient operation requires the avoidance of re-arguing the questions that have already been decided." Akeva L.L.C. v. Adidas America, Inc., 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005) (Osteen, J.). To this end, "a motion to reconsider is not proper where it only asks the Court to rethink its prior decision, or presents a better or more compelling argument that the party could have presented in the original briefs on the matter." Hinton v. Henderson, No. 3:10cv505, 2011 WL 2142799, at *1 (W.D.N.C. May 31, 2011) (unpublished) (internal citations and quotation marks omitted); see also Coryn Group II, LLC v. O.C. Seacrets, Inc., No. WDQ-08-2764, 2011 WL 4701749, at *2 (D. Md. Sept. 30, 2011) (unpublished) ("When a request for reconsideration merely asks the court to 'change its mind,' relief is not authorized."); DirecTV, Inc. v. Hart, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004) (ruling that a motion to reconsider is not proper to "merely ask[] the court 'to rethink what the Court had already thought through - rightly or wrongly'" (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985))).

B. Discussion

Salem's motion to reconsider attempts to "present[] a better or more compelling argument that [Salem] could have presented in

the original briefs on the matter." Hinton, 2011 WL 2142799, at *1 (internal citations and quotation marks omitted). As Salem's own citations indicate, the arguments currently presented to the Court were raised by Salem in its original Salem Carriers Inc. and Salem Leasing, Inc.'s Motion to Quash (Docket Entry 1). With respect to consideration of the settlement agreement, the record lacks any indication that said agreement, and the arguments based on said agreement, could not have been presented as part of Salem's original briefing. (See Docket Entry 9; Docket Entry 18.) In fact, Salem indicates the settlement agreement was entered into in August 2009 (see Docket Entry 9, ¶ 3), months before the instant dispute arose.

Furthermore, looking to the factors typically applied to motions for reconsideration of final judgments under Fed. R. Civ. P. 59(e) as guidance, the Court is not convinced that Magistrate Judge Dixon's previous Order was based on "clear error" or that reconsideration is necessary "to prevent manifest injustice." Pacific Ins. Co., 148 F.3d at 403. Nor does Salem argue that reconsideration is necessary "to accommodate an intervening change in controlling law" id., or "to account for new evidence not available at trial," id. (See Docket Entry 9; Docket Entry 18.)

Finally, upon examining whether "the court has obviously misapprehended a party's position or the facts," Madison River, 402 F. Supp. 2d at 619, the Court is not convinced that any facts of

the case were misapprehended by Magistrate Judge Dixon when deciding the previous Order. The Court also notes that Salem had the opportunity to further expound on its arguments before Magistrate Judge Dixon by way of filing a Reply, which it declined to do. Under these circumstances, the Court will deny Salem Carriers, Inc. and Salem Leasing, Inc.'s Motion to Reconsider (Docket Entry 8).

### III. Motion for Stay

Salem "move[s] this Court pursuant to Federal Rules of Civil Procedure 6, 7, and 72 and Local Rule 7.3(j) for an Order staying the 14-day deadline in [Federal] Rule [of Civil Procedure] 72 for serving and filing written objections to Magistrate Judge Dixon's June 14, 2011 minute order denying Salem's motion to quash a document subpoena . . . ." (Docket Entry 10 at 1.)

Rule 6 of the Federal Rules of Civil Procedure allows the Court, for good cause, to extend the time within which a party must or may perform a certain act. Fed. R. Civ. P. 6(b)(1). Salem contends that "it does not appear to be appropriate for Salem to submit written objections to the district judge as doing so for consideration on a parallel track with the Motion To [sic] Reconsider would be inefficient and a waste of the Court's assets." (Id. at 1.) The Court agrees, and, for good cause shown, will grant Salem's motion for stay. Salem suggests that "[t]he stay should be open ended to allow the parties to submit written

-17-

objections, if they deem it necessary, after the Court decides the pending Motion to Reconsider" (id. at 2), and the Court will grant the parties 14 days from the entry of this Order to file objections to Magistrate Judge Dixon's Minute Order denying Salem's motion to quash (Docket Entry dated June 14, 2011).

## IV. Motion to Withdraw

Salem requests the Court "to allow Gary L. Beaver, Jeffrey M. Reichard, and the law firm of Nexsen Pruet, PLLC to withdraw their appearance in this case" (Docket Entry 20 at 1). Salem notes that "Danielle Williams, Dustin Greene, and the law firm of Kilpatrick Townsend & Stockton LLP, have already made their appearances as substitute counsel for Salem." (Id.) Considering the filings of the parties and all records before the Court, the Court will grant Salem's motion.

## Conclusion

Salem has not persuaded the Court to exercise its discretion to reconsider the previous order denying Salem's motion to quash under Fed. R. Civ. P. 54(b). With respect to Salem's motion to seal (Docket Entry 11), Salem has not given the Court an opportunity to inspect the settlement agreement and the affidavit identifying said agreement. Furthermore, as the record indicates that the settlement agreement providing the basis for Salem's motion to seal has been publicly docketed in the United States District Court for the District of South Carolina, Salem has failed

to show good cause for this Court to seal the documents at issue. Finally, the Court finds Salem's motion to stay and motion for withdrawal of appearance of counsel appropriate.

**IT IS THEREFORE ORDERED** that Salem Carriers, Inc. and Salem Leasing, Inc.'s Motion to Reconsider (Docket Entry 8) is **DENIED**.

**IT IS FURTHER ORDERED** that Salem Carriers, Inc. and Salem Leasing, Inc.'s Motion for Leave to File Documents Under Seal (Docket Entry 11) is **DENIED** and the Clerk is directed to unseal Salem Carriers, Inc. and Salem Leasing, Inc.'s Supplemental Brief in Support of Motion to Reconsider (Docket Entry 13).

**IT IS FURTHER ORDERED** that Salem Carriers, Inc. and Salem Leasing, Inc.'s Motion for Stay (Docket Entry 10) is **GRANTED**, and Salem and Plaintiffs have 14 days from the entry of this Order to object to United States Magistrate Judge Wallace W. Dixon's Minute Order denying Salem Carriers, Inc. and Salem Leasing, Inc.'s Motion to Quash Subpoena (Docket Entry dated June 14, 2011).

**IT IS FURTHER ORDERED** that Salem Carriers, Inc. and Salem Leasing, Inc. [sic] Motion for Withdrawal of Appearance of Counsel (Docket Entry 20) is **GRANTED**. The Clerk is directed to terminate Gary L. Beaver, Jeffrey M. Reichard, and the law firm of Nexsen

Pruet, PLLC as counsel for Salem Carriers, Inc. and Salem Leasing, Inc. in this case.

                                                          /s/ L. Patrick Auld
                                                            **L. Patrick Auld**
                                        **United States Magistrate Judge**

December 14, 2011